Thank you, Counsel. Thank you, Your Honor. Good morning, and may it please the Court. My name is Christina Hellman, and I represent the petitioner, Travonne Barnett. I plan to reserve about two minutes for rebuttal. All right. The underlying constitutional violation in this case is quite straightforward. The prosecutor threatened to witness Jonathan Sprague with perjury if Sprague did not give testimony in accordance with what the prosecutor wanted to hear. As a result, Sprague refused to testify, so the Court never heard his helpful information that would have called into question the prosecutor's case against Mr. Barnett. The prosecutor's actions thus violated due process under the clearly established law of Webb v. Texas. This was not an open and shut case for the prosecution, and Sprague— But Webb v. Texas involves a different factual scenario where basically the judge's comments drove the witness off the stand. That's correct, Your Honor. And in order for there to be clearly established law, there does not have to be factual identity. The Supreme Court has said that law can clearly apply when the facts are different, and this Court has come up with a test to know when a Supreme Court's holding does clearly apply to a new factual situation. What do we have on the record established that the testimony the defense might have gotten from this government witness would have helped the defense? All we know is that his first grand jury testimony was, I don't know anything, and then the second one is essentially that the defendant fired the shot. Your Honor, we do know, because we had a motion for new trial in which it was represented that Mr. Sprague was going to testify, that Mr. Barnett would never wear red because of his gang association with a different gang, that that night Mr. Barnett was wearing a puffy silver jacket, and that actually it was Mr. Sprague himself who was wearing red. And so we do have— In the trial, the defense didn't try and call the witness. It was the government. It was the government witness and the government's action that prevented him testifying. It was the government witness, Your Honor, that's correct, in name only. The substance of the testimony that was going to be provided was going to be defense testimony. So the fact that the prosecutor was the one who called him to the stand doesn't matter for the purposes of this analysis because Webb focuses on the defendant's right to present a defense, and that's the defendant's right to present his or her version of the facts to the court. So the defense never bears any burden, and the defense can put on a case entirely through cross-examination of government witnesses. So if the harm the Supreme Court was focusing on is depriving the defense of that testimony, then it is immaterial who called the witness, technically who called the witness. And Judge Wen, I wanted to get back to your question about whether it does matter that this was not a judge, that it was the prosecutor. This Court has held in Ayala that it is the action of governmental actors that drive, the comments of governmental actors that drive witnesses from the stand, that Webb does clearly apply in that situation. And Ayala was actually not a judge. It wasn't a prosecutor. It was a detective that made the threats that were challenged there. And I would also point out, too, that because principles apply when it is clearly, when the principle clearly extends, it's important for this Court to note that this is almost worse than what happened in Webb, because in Webb it was a judge making the comments. Here it's a prosecutor. That's the person who actually has the authority to bring the charges. And so when he says I will charge him with perjury if his testimony doesn't line up with how I represent his grand jury testimony, that's more coercive than hearing it from a judge, because that person could actually bring, could and will actually bring those charges against him. The concern of the prosecutor was that he would testify, not at all, saying I just don't know anything.  But his first grand jury testimony was I don't know what happened at all. That's correct. That's what he said the first time. So we don't have at trial the knowledge on the part of the prosecutor that, on cross, the defendant would be able to bring out this dressing testimony. We don't. That's correct. We don't have during that hearing, we don't have that testimony, Your Honor. And it's because the prosecutor said not, said if he doesn't testify the way he did at the second grand jury, I will charge him with perjury. He was never, Sprague was never offered immunity to give testimony to find out what actually he was going to say. We do know what he was anticipated to say through the motion for a new trial. But you're right to say that we don't know that. They didn't know that at trial. But they did know that it was going to be helpful to Mr. Barnett's defense, and it was not going to be what he had said at the second grand jury. And when considering that, too, I think it's really important for this Court to note that the testimony, Sprague's testimony at the second grand jury that we have in the record is actually not a verbatim account of what occurred. It's the prosecutor's representation of that testimony, which was challenged as being unreliable and incomplete, and also as the result of a prior threat of perjury, that Sprague had come to the grand jury first, had said he didn't know very much. When other witnesses testified, the prosecutor went back to Sprague and said, I don't believe you told the truth. If you don't come back and correct your testimony, I will charge you with perjury again. So we have a witness who potentially gave grand jury testimony under duress, and we don't actually know what that testimony was. But we do know from the motion for a new trial that it was anticipated that Sprague would give helpful testimony for Mr. Barnett. And we do know from Webb and the other cases that have applied that, that comments such as the prosecutor made here violate due process because they deprive the witness of a voluntary choice about testifying, and they prevent the defense from having a full and fair case. And if there are no questions, I will reserve the remainder of the time. All right, counsel. Thank you. We'll hear from the State. Good morning, Your Honors. May it please the Court. Adam Holbrook on behalf of the Superintendent. This Court should affirm because the State Court's decision denying Petitioner's motion for a new trial was not contrary to or an unreasonable application of the Supreme Court's decision in Webb. Webb itself, the holding in Webb, was expressly, by its terms, narrowly limited to the specific facts of that case. It said in the holding, under these circumstances, where a judge is the one making the threats, and those threats effectively drive off the witness from the stand, under those circumstances, there has been a substantial interference with a defendant's right to put on his own case. And there are many factual distinctions between this case and Webb, any number of which I think would have allowed the State Court to reasonably not apply Webb to these circumstances. And I'll focus on just a couple. The first, and I think one of the most important, is this distinction between a prosecution witness and a defense witness. And I think that's important because if you look at the case that Webb cited, it was Washington v. Texas. That was a Sixth Amendment case that dealt with the right to use compulsory process to bring a witness, a defense witness, to testify on the defense's behalf. And that was the only case that Webb relied on. So Webb was relying on a case that focused only on defense witnesses. It was a case that involved only a defense witness. And there certainly wasn't clearly established in Webb that this would apply to States' witnesses as well. And in fact, I believe it's the Juan case where, in this Court's decision in Juan, that says what was not unquestionably decided in Webb was whether this, that principle applies to States' witnesses in addition to defense witnesses. And the only other point, fact I'd like to touch on, is the distinction between the witness in Webb who came in fully prepared to testify, willing to testify, and the witness here who came in pleading the Fifth. And so we have an entirely different circumstance here that wasn't presented in Webb, that the Court didn't confront in Webb. And so when you're looking at whether or not the prosecutor's actions actually drove this witness off the stand, it was an easier decision to make in Webb because you had a willing witness. Here you didn't. You had a recalcitrant witness who ultimately refused to testify after pleading the Fifth and willing to accept contempt instead of testifying. So I think those are the two most important distinctions. We identify several other distinctions in our brief, but unless the Court has any further questions, simply ask to affirm. The proffer in this particular case was that the witness came in ready to testify to a different version? In other words, the witness came in ready to testify favorably to the defense, and that would have been different than his prior testimony under oath. I don't think the witness was ready to testify. There was a discussion during opening statement where the defense counsel brought up this issue and said, we have a witness who's going to probably plead the Fifth. And so that was when there was a decision made by the Court to appoint counsel for this witness, to advise counsel on this issue. So I don't think it's at all clear that this witness was going to testify. He was recalcitrant from the beginning. We know, I think, what his story would have been if he had ultimately decided to testify. We know to some extent, at least. I think it's a little vague as to exactly what he would have said. But he was not a willing witness. What do we know he would have said that would have helped the prosecution? Would he have said, Barnett fired the shot? Well, we don't know. We don't know. All we know from the trial testimony is that there's some indication, and this was what his attorney represented, that his testimony would have been consistent in some way with the grand jury testimony that he gave. We find out later in this motion for a new trial through an affidavit of counsel, again, not from the witness, saying that he would have said something to the effect of the petitioner doesn't wear red. And that's it. So we don't know whether, in fact, whether he would have changed his testimony about having seen Petitioner shoot the gun. There's no evidence in the record that says that he would have changed that testimony. For all we know, he would have said, Petitioner never wears red, but I still saw him shoot the gun. There's no denial of that in the record. I ask the Court to affirm. Thank you, Your Honors. Thank you, Counsel. I have three points to make in rebuttal. First goes to the last point Counsel made, that there's no evidence that he wouldn't have testified equivalently with his prior grand jury testimony. That's not supported by the record. If that was the testimony he was going to give, there was going to be no issue of perjury and there would have been no colloquy and there would have been no need to give him his own lawyer. So the only legitimate reading of the record is that there was going to be some difference. Second, the counsel for the government cites Wan, which indicated this Court's case, Wan that said that Webb has not been extended to this situation. Wan was not an AEDPA case. And so the Court was not engaged in an analysis of whether there was clearly established law. However, Wan did identify the underlying constitutional harm as being equivalent, whether it's a defense witness or a government witness. And so it's Petitioner's position that had the Court engaged in the AEDPA analysis, it would have reached the same conclusion it did in Wan and would have found that Webb directly applies in this case. And third and finally, this case, yes, Mr. Sprague came in and pled the Fifth in the beginning. However, after the Court told Mr. Sprague that he had no Fifth Amendment right in this case and after the government, the prosecutor, had engaged in his threatening statements throughout the colloquy, Sprague still refused to testify. And so the import of that is that this was not a recalcitrant witness. This was a witness who did want to testify, but who was concerned, rightfully so, with a perjury charge if he gave what he considered to be truthful testimony and it didn't line up with what the prosecutor wanted to hear. In those circumstances, and under Webb, which does apply in this case, Mr. Barnett's due process rights were violated. We ask this Court to reverse and remand with instructions to grant the writ. Thank you. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the Court.
judges: Rawlinson, Nguyen, Garbis